### E. J. MANVILLE MACH. CO. v. EXCELSIOR NEEDLE CO.

(Circuit Court, D. Connecticut. June 12, 1908.)

#### No. 1,161.

PATENTS—INFRINGEMENT—MACHINE FOR FORMING NIPPLES.

The Campbell patent, No. 594,457, for a machine for forming nipples such as are employed in the building of wire spoke wheels for bicycles and similar vehicles, discloses invention of such merit and covers a machine of such value and success in operation as to entitle it to a reasonably liberal construction and fair range of equivalents. As so construed, *held* infringed.

In Equity. Suit for infringement of letters patent No. 594,457, for a machine for forming nipples, granted to Andrew C. Campbell, November 30, 1897. On final hearing.

Edmund Wetmore and Oscar W. Jeffery, for complainant.

C. L. Sturtevant, for defendant.

PLATT, District Judge. I have studied this case exhaustively and my conclusions are definite and positive; but I have neither time nor strength to give it the treatment on paper which it deserves. A few words in broad outline must suffice.

The defendant bought and used one of complainant's patented machines, and made overtures for many more, insisting, however, upon the proviso that its rights should be exclusive. The price demanded being unsatisfactory, Mr. Dayton, an expert mechanic in defendant's employ, claimed that he could save money for defendant by constructing a new machine which would avoid the monopoly of the patent. Having the patented machine before him, and knowing what it had done and could do, he undertook such construction. Has he accomplished his avowed purpose? is the question before us.

His production is in many respects a slavish copy of the patented original. The inventor must feel highly flattered by such action, and it persuades one that Mr. Dayton must have thought the machine a valuable contribution to the world's knowledge. If he has appropriated the essence of the invention, it is immaterial whether or not he has added or subtracted things which leave his machine in such shape that it will work a little better than complainant's. Giving the defendant the benefit of all he claims from his study of the prior art, the fact remains that the patented machine was the first and only one which has taken nipple blanks and so treated them automatically, in the matter of accuracy and speed, as to give to the world a machine which is practically and commercially an unqualified success. To take as a starting point the wire itself, and from it to turn out finished nipples on the same machine, would destroy the very essence of the invention, which has, under the influence of the patentee's mind, worked out so admirably. It is noticeable that the defendant has not attempted to perform such a feat as that.

In both machines here in controversy the blank comes from a hopper, and is presented to and held by the jaws of a carrier, which in complainant's machine is mounted on a horizontal shaft, and in defendant's machine on a vertical shaft. In both machines the blank, while held by the jaws of the carrier, is presented by an intermittent motion to the different tools; the time of rest being longer than the time of movement. The means of obtaining this peculiar kind of intermittent motion are identically the same in both machines, and to my mind the central and greatest merit of the invention lies right at this point. The reciprocating intermittent feed mechanism dominates, permeates, and vitalizes the entire combination; and when I say combination I mean it, for it is clear to me that the inventive thought discloses a pure combination, which can in no sense be called an agregation. If the new arrangement of old elements produces a new and useful result never before attained, it is practically certain that the mind which conceived the combination produced an invention. In Loom Co. v. Higgins, 105 U. S. 591, 26 L. Ed. 1177, the Supreme Court said that to make a loom produce 50 yards of carpet per day which had never before produced over 40 is to bring forth a new and useful result, and to do so shows invention, even if all the elements combined to produce

that result are old. The facts in that case are pertinent here, and to my mind it makes the final conclusion here unanswerable.

The patented machine is such a remarkable commercial success that justice will not be done to the inventor unless the court takes a reasonably generous view of his specifications and claims, and, when it reaches the question of infringement, gives the patent the benefit of a fair use of the doctrine of equivalents. From my viewpoint, it seems unnecessary to go any farther than that; but I am of the opinion that, if the case demanded the broadest principles which are ever applied to a pioneer patent, it would be right to use them. The group of claims headed by 35 shows a combination of elements never before brought together to produce any result, much less to aid in producing a finished nipple. There is nothing in the prior art to invoke against the novelty of such combination, except the star wheel mechanisms used in certain patents for looms and printing press machinery. It is a far cry from weaving cloth or printing paper to making nipples. The analogy is absent; but, if we assume the contrary, it certainly requires invention to take the best reference, viz., Luscomb's star wheel, with its reciprocating action, and, with it in mind, produce the mechanism described and claimed in the patent in suit and copied in defendant's machine with all the exactness of the most capable Chinaman.

Luscomb was only thinking about a periodic rotary m  ement, where-by the operation of one mechanism would alternate with the operation of another. His place in the prior art is doubtful, but that makes no difference. His thought, and nothing beyond, is equally apparent in the other prior art patents. Campbell's purpose was to increase the ratio of the speed of movement to the time of dwell of the carrier. This is a vital necessity in his combination, and is entirely new. The defendant has appropriated the claim baldly, in spirit and in detail. It infringes at this point beyond any doubt. The organization claims can only be avoided by the defendant by sticking in the bark and dealing captiously with words.

I do not base my conclusions upon a prior art which omits Timm and Krummel and Roberts, although with them out the argument leading thereto is intensified, because in that event there is no nipple-making machine which discloses any of the elements of the patent in suit. It would then be worse than idle to argue that it was not invention to combine old elements, which could be found scattered here and there through machines for widely different purposes. It is obvious that, if such was the situation, he has produced a new machine and a new result. On the other hand, with those patents in the art, he has produced a new machine, and reached a result which, if it is old, is certainly reached in a very much better, quicker, and surer way than it had been reached before. It requires invention under the decisions to do that.

Let me say, in passing, that the Timm and Krummel and the Roberts machines, from the moment of conception up to the time the testimony in this case closed, were never for a moment practical, successful machines. They developed into abandoned experiments, and are not of the class of inventions which can properly be brought forward as narrowing or restricting in any degree the inventor who does offer to

the world a valuable asset along the same lines. It does not negative invention for an expert, guided by the patent, to grope in the prior art, both similar and analogous, and from his gleanings put together a hypothetical machine, which to the common eye would appear to be capable of doing the work which the patented machine actually does. To do in the first instance what the expert does now required invention, as has already been suggested. The excursion of the expert is ingenious, but fruitless.

The claims at issue are 1, 2, 3, 4, 5, 13, 14, 23, 24, 25, 26, 27, 28, 31, and 35. The vitally important ones so far as my comprehension carries me, are the organization claims, viz., 1, 2, and 5, and the index mechanism claim, 35, and claim 31, which involves especially the tapping mechanism. Claim 31 shows invention of a high character, and is substantially copied by defendant. The tapping mechanism and the peculiar index mechanism are the two important parts of the novel general construction, which in my opinion contribute especially to bring about the final result obtained, viz., the speedy, accurate, safe, and sure production of marketable nipples in large quantities, whereby the average cost of nipples produced by the patented machine is so lessened as to make the defendant envious and unconscionable. The claims above mentioned are, I think, valid and infringed.

Claims 23, 24, 25, 26, 27, and 28 are permutations of claim 35, and are valid and infringed. Defendant's attempt to evade claims 23 and 24 by a forced construction of the word "adjustable" is pathetic. The patent law is interested in the substance of an invention, and not in the embroidery woven around the substantial central thought. It does not, therefore, profit the alleged infringer, after appropriating the substance, to vary the pattern which the inventor exhibited in his embroidery. Defendant's jaws are certainly adjustable. If his lacework surroundings are prettier, it does not relieve him from the trespass. These thoughts apply to the patent as a whole, not alone to these claims.

Claims 3 and 4 seem trifling as compared with the larger issues; but I think the issue should be decided for the complainant in respect of them.

An examination of claims 13 and 14 compels one to pause. They deal with the means of transferring the blanks from the hopper to the jaws of the carrier, and particularly with the element of reciprocating fingers. I am inclined to think it would somewhat stretch the patent to give the complainant the benefit of these claims. They are unimportant, because, if the ground all about them is pre-empted, it matters not that defendant would not trespass simply by using its means of transporting blanks across that sacred ground. On the whole case, the issue on those claims must be for the defendant.

Let a decree be entered, based upon these fragmentary remarks.